**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

| | |
|---|---|
| **WILLIS BURDEN** | : **Case No:** 4:26-CV-113-DJH |
| 63 Wright Rd. | : |
| Beaver Dam, KY 42320 | : **Chief Judge** David J. Hale |
| | : |
| and, | : |
| | : |
| **OHIO COUNTY, KENTUCKY** | : |
| c/o Ohio County Judge Executive | : |
| Ohio County Courthouse | : **COMPLAINT WITH JURY** |
| 100 East Washington Street | : **DEMAND** |
| Hartford, Kentucky 42347 | : |
| | : |
| And, | : |
| | : |
| **OHIO COUNTY SHERIFF ADAM** | : |
| **WRIGHT, in his official capacity** | : |
| **Ohio County Sheriff's Office** | : |
| 301 South Main Street | : |
| Hartford, Kentucky 42347 | : |
| | : |
| And, | : |
| | : |
| **DEPUTY JENNIFER BERNARD, in** | : |
| **her individual capacity** | : |
| **Ohio County Sheriff's Office** | : |
| 301 South Main Street | : |
| Hartford, Kentucky 42347 | : |
| | : |
| And, | : |
| | : |
| **[FIRST NAME UNKNOWN]** | : |
| **MATTHEWS, in his individual** | : |
| **capacity** | : |
| Ohio County Sheriff's Office | : |
| 301 South Main Street | : |
| Hartford, Kentucky 42347 | : |
| | : |
| | : |
| | : |
| | : |

**CITY OF BEAVER DAM,**　　　　　　:
**KENTUCKY**　　　　　　　　　　　　:
c/o Mayor　　　　　　　　　　　　　:
200 North Main Street　　　　　　　:
Beaver Dam, Kentucky 42320　　　　:
　　　　　　　　　　　　　　　　　　:
And,　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
**OFFICER JACOB BLANCHARD, in**　:
**his individual capacity**　　　　　　:
Beaver Dam Police Department　　　:
200 North Main Street　　　　　　　:
Beaver Dam, Kentucky 42320　　　　:
　　　　　　　　　　　　　　　　　　:
And,　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
**CITY OF HARTFORD, KENTUCKY**　:
c/o Mayor　　　　　　　　　　　　　:
114 East Washington Street　　　　　:
Hartford, Kentucky 42347　　　　　　:
　　　　　　　　　　　　　　　　　　:
And,　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
**MAJOR JEREMY ROSE, in his**　　:
**individual capacity**　　　　　　　　:
Hartford Police Department　　　　　:
114 East Washington Street　　　　　:
Hartford, Kentucky 42347　　　　　　:
　　　　　　　　　　　　　　　　　　:
And,　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
**CHIEF ROGER YORK, in his**　　　:
**individual and official capacities**　:
Hartford Police Department　　　　　:
114 East Washington Street　　　　　:
Hartford, Kentucky 42347　　　　　　:
　　　　　　　　　　　　　　　　　　:
And,　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
**JOHN/JANE DOES 1–10**　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　DEFENDANTS.　　　　　　　:

## **INTRODUCTION**

1. This action arises from a series of law enforcement actions taken after Plaintiff Willis Burden questioned and attempted to formally complain about police conduct he believed to be unsafe and unlawful.

2. After observing a police vehicle maneuver near a public building in a manner he reasonably believed created a risk of harm, Plaintiff confronted the officer and sought to file a complaint. Officers later detained him in a public parking area, demanded identification without articulating reasonable suspicion, surrounded him, and arrested him. He was charged with disorderly conduct, obstruction of government operations, and menacing based primarily on speech and verbal disagreement.

3. Soon thereafter, while appearing at the courthouse in connection with those charges, Plaintiff was arrested again and charged with falsely reporting an incident to law enforcement based on a disputed interpretation of his earlier statement. He was booked, fingerprinted, and subjected to additional criminal proceedings. Officers later appeared at his residence at night under circumstances Plaintiff reasonably perceived as retaliatory.

4. Plaintiff's conduct consisted of speech, complaints, and requests for accountability. The Constitution protects the right to criticize law enforcement and prohibits arrest without probable cause. Plaintiff seeks redress for violations of his rights under the First and Fourth Amendments and for related harms under Kentucky law.

## **PARTIES**

1. Plaintiff Willis Burden is a natural person and resident of Ohio County, Kentucky. At all relevant times, Plaintiff was a private citizen engaged in lawful activity within Ohio County and surrounding municipalities.

2. Defendant Ohio County, Kentucky is a political subdivision of the Commonwealth of Kentucky. It operates and is responsible for the policies, practices, training, supervision, and discipline of the Ohio County Sheriff's Office and its deputies. At all relevant times, deputies involved in the events described herein were employees and agents of Ohio County acting within the scope of their employment and under color of state law.

3. Defendant Sheriff Adam Wright, in his official capacity, is the elected Sheriff of Ohio County and the final policymaker for the Ohio County Sheriff's Office regarding law enforcement policies, training, supervision, and discipline. An official-capacity claim against Sheriff Wright is a claim against Ohio County itself.

4. Defendant Deputy Jennifer Bernard, in her individual capacity, was at all relevant times a deputy employed by the Ohio County Sheriff's Office. She personally participated in encounters with Plaintiff, including responding to Plaintiff's vehicle in a public parking area, demanding identification, participating in his arrest, and later appearing at Plaintiff's residence during a nighttime law enforcement visit. At all relevant times, she acted under color of state law.

5. Defendant [First Name Unknown] Matthews, in his individual capacity, was at all relevant times a supervisory deputy or officer with the Ohio County Sheriff's Office. He responded to the parking lot encounter involving Plaintiff, advised that Plaintiff was required to provide identification upon request, and participated in or ratified

the decision to arrest Plaintiff. At all relevant times, he acted under color of state law.

6. Defendant City of Beaver Dam, Kentucky is a municipal corporation organized under the laws of the Commonwealth of Kentucky. It operates the Beaver Dam Police Department and is responsible for the policies, practices, training, supervision, and discipline of its officers. At all relevant times, officers involved in the events described herein were employees and agents of the City acting under color of state law.

7. Defendant Officer Jacob Blanchard, in his individual capacity, was at all relevant times a police officer employed by the Beaver Dam Police Department. He was the officer whose driving maneuver prompted Plaintiff's initial complaint and later provided statements or information that were relied upon in the initiation of criminal charges against Plaintiff. At all relevant times, he acted under color of state law.

8. Defendant City of Hartford, Kentucky is a municipal corporation organized under the laws of the Commonwealth of Kentucky. It operates the Hartford Police Department and is responsible for the policies, practices, training, supervision, and discipline of its officers. At all relevant times, officers involved in the events described herein were employees and agents of the City acting under color of state law.

9. Defendant Major Jeremy Rose, in his individual capacity, was at all relevant times an officer or supervisor employed by the Hartford Police Department. He interacted with Plaintiff when Plaintiff attempted to make a formal complaint, participated in handling or declining to accept Plaintiff's sworn statement, and was

involved in the sequence of events leading to further law enforcement action against Plaintiff. At all relevant times, he acted under color of state law.

10. Defendant Chief Roger York, in his individual and official capacities, was at all relevant times a supervisory official with the Hartford Police Department. He approved, reviewed, ratified, or otherwise participated in the investigation and reporting that led to criminal charges against Plaintiff for false reporting. In his official capacity, he functioned as a policymaker for the City of Hartford regarding complaint handling, investigation standards, and referral of charges.

11. Defendants John and Jane Does 1 through 10 are law enforcement officers or supervisory officials whose identities are presently unknown but who participated in Plaintiff's detention, arrest, prosecution, booking, nighttime home visit, or related decision-making. These defendants will be substituted with their true names upon discovery. At all relevant times, each acted under color of state law.

12. At all relevant times, each individual Defendant was acting within the course and scope of his or her employment and under color of the statutes, ordinances, regulations, policies, customs, and usages of the Commonwealth of Kentucky and the respective municipal or county entities.

13. The municipal Defendants, through their final policymakers, maintained policies, customs, practices, or failures to train and supervise that were moving forces behind the constitutional violations described in this Complaint.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over all Defendants because this Action is brought under 42 U.S.C. § 1982 and 42 U.S.C. § 1988, and this Action is brought primarily under federal law.

15. Plaintiff also state claims under the laws of the Commonwealth of Kentucky. These claims are inherently related to the other claims in this case, over which this Court has original jurisdiction, that they are a part of the same case or controversy under Article III of the United States Constitution.  Accordingly, this Court has supplemental jurisdiction of these claims under 28 U.S.C. § 1367.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because all Defendants reside in this District and because a substantial part of the events or omissions giving rise to the claims occurred in Ohio County, Kentucky, which lies within the Western District of Kentucky.

17. The Owensboro Division of the Western District of Kentucky is the proper divisional venue because Ohio County, Kentucky is located within that Division.

## STATEMENT OF FACTS

18. Plaintiff Willis Burden is a resident of Ohio County, Kentucky and an active member of his community.

19. Plaintiff volunteers in ministry work assisting youth and is known locally for that involvement.

20. At all relevant times, Plaintiff was engaged in lawful activity and was not subject to any outstanding warrants.

21. While near a public government building in Ohio County, Plaintiff observed a marked Beaver Dam police vehicle execute a maneuver in a parking area adjacent to the building.

22. The maneuver involved reversing and changing direction in close proximity to parked vehicles and pedestrian areas.

23. Plaintiff reasonably believed the maneuver to be unsafe and unlawful.

24. Plaintiff perceived that the patrol vehicle created a risk of collision and nearly struck him or his vehicle.

25. Plaintiff approached the officer and questioned the maneuver.

26. Plaintiff requested the officer's name and badge number.

27. Plaintiff asked that the officer acknowledge the maneuver and hold himself to the same traffic standards applied to ordinary citizens.

28. The officer denied wrongdoing and declined to issue any citation.

29. Plaintiff then walked to the Hartford Police Department to report what he believed to be improper and unsafe conduct.

30. Plaintiff requested to file a sworn statement regarding the incident.

31. A Hartford officer initially engaged Plaintiff but left before taking a written statement.

32. Plaintiff requested to speak with supervisory officials.

33. Plaintiff later completed a citizen complaint form describing the incident.

34. Plaintiff sought to use established governmental procedures to document what he witnessed.

35. Plaintiff submitted public records requests seeking dispatch logs, radio traffic, body camera footage, dash camera footage, surveillance footage, officer training

records, policies and procedures, written reports, and the identities of all officers involved.

36. Plaintiff followed up when records were not promptly produced.

37. Plaintiff did not receive complete responses to his records requests.

38. Certain requested materials, including full video recordings and communication records, were not delivered.

39. Plaintiff did not receive confirmation that all responsive evidence had been preserved.

40. After pursuing complaints and record requests, Plaintiff parked in a public parking area to take a phone call.

41. Plaintiff was seated in his vehicle and engaged in a conversation.

42. A deputy from the Ohio County Sheriff's Office approached Plaintiff's vehicle.

43. The deputy did not inform Plaintiff that he was suspected of committing any crime.

44. The deputy demanded identification.

45. Plaintiff asked what crime he was suspected of committing.

46. No specific criminal conduct was identified.

47. Plaintiff requested a supervisor.

48. Multiple officers arrived at the scene.

49. Plaintiff remained in place and did not attempt to flee.

50. Plaintiff did not physically threaten any officer.

51. Plaintiff did not strike or attempt to strike anyone.

52. Plaintiff did not physically interfere with any investigation.

53. A supervising officer stated that Plaintiff was required to provide identification whenever requested.

54. Plaintiff disputed that assertion and again asked what crime justified the demand.

55. Plaintiff was arrested.

56. Plaintiff was charged with disorderly conduct, obstruction of government operations, and menacing.

57. The charges were based primarily on Plaintiff's speech and his refusal to produce identification absent an explanation of suspected criminal activity.

58. Plaintiff was transported to jail and confined for approximately twenty-four hours.

59. Plaintiff lost his liberty and was separated from his family and community responsibilities.

60. Upon release, Plaintiff requested copies of charging documents and related materials.

61. Plaintiff was not provided complete documentation at that time.

62. After Plaintiff continued to pursue complaints and accountability regarding the traffic maneuver, law enforcement initiated a charge alleging that Plaintiff falsely reported an incident to law enforcement.

63. The charge was based on Plaintiff's statement that the patrol vehicle nearly struck him.

64. The alleged falsity centered on whether Plaintiff meant that he personally was almost struck or whether he was referring to his vehicle and the risk created by the maneuver.

65. Plaintiff consistently maintained that his statement reflected his perception of danger and referred to the risk posed to himself and his property.

66. Plaintiff did not knowingly provide false information.

67. Despite the absence of evidence that Plaintiff intentionally fabricated a report, a criminal complaint and warrant were issued.

68. The decision to pursue the charge occurred after Plaintiff filed complaints and requested records regarding officer conduct.

69. Plaintiff was required to appear in court in connection with the charge.

70. While present at the courthouse addressing matters related to the earlier charges, Plaintiff was arrested again in connection with the false reporting allegation.

71. The courthouse arrest occurred inside a public courtroom.

72. Members of Plaintiff's community were present.

73. Plaintiff was taken into custody in view of those individuals.

74. Plaintiff was escorted from the courtroom and transported for booking.

75. Plaintiff was fingerprinted and processed.

76. Plaintiff was released shortly thereafter.

77. Plaintiff was not accused of any new conduct occurring at the courthouse.

78. The courthouse arrest was based solely on the disputed interpretation of Plaintiff's earlier statement.

79. The public arrest caused humiliation and reputational harm.

80. Plaintiff experienced disruption to his ministry and volunteer activities as a result of the criminal charges and public arrests.

81. Plaintiff incurred legal expenses defending against the charges.

82. Plaintiff was informed that the false reporting charge could be deferred and dismissed after a period of time if no further offenses occurred.

83. The initiation and continuation of the false reporting prosecution lacked probable cause because Plaintiff's statement was at most a disputed interpretation of perceived risk rather than a knowingly false report.

84. On a later occasion, deputies arrived at Plaintiff's residence at night stating they were responding to a fireworks complaint.

85. Plaintiff informed deputies he was unaware of fireworks activity.

86. Plaintiff asked deputies to leave his property.

87. Minor family members present in the home were frightened by the late-night police presence.

88. Plaintiff later contacted dispatch seeking records of the alleged fireworks call and the identities of responding deputies.

89. Plaintiff received inconsistent information regarding whether such a call had been logged.

90. Plaintiff did not receive complete documentation in response to his request.

91. Plaintiff reasonably perceived the late-night visit as part of a continuing pattern of scrutiny following his complaints and record requests.

92. As a direct result of Defendants' actions, Plaintiff suffered loss of liberty, emotional distress, anxiety, humiliation, reputational injury, financial expense, and continuing fear of further retaliatory law enforcement action.

## Count I– Fourth Amendment – Unlawful Seizure and False Arrest

93. RPlaintiff incorporates all preceding paragraphs as if fully set forth herein.

94. The Fourth Amendment protects individuals from unreasonable searches and seizures.

95. A warrantless detention requires reasonable suspicion supported by specific and articulable facts.

96. A warrantless arrest requires probable cause supported by facts sufficient to warrant a prudent person in believing that the suspect has committed or is committing an offense.

97. Defendants, acting under color of state law, seized Plaintiff when they approached his vehicle, demanded identification, surrounded him with multiple officers, restricted his freedom of movement, and ultimately placed him under arrest.

98. At the time of the initial detention, Plaintiff was lawfully parked in a public parking area.

99. Plaintiff was seated in his vehicle and engaged in a phone conversation.

100. Defendants did not observe Plaintiff commit a crime.

101. Defendants did not articulate specific and objective facts establishing reasonable suspicion of criminal activity.

102. Defendants demanded identification without identifying any lawful basis for the demand.

103. Plaintiff asked what crime he was suspected of committing.

104. Defendants did not provide an answer identifying specific criminal conduct.

105. Plaintiff requested a supervisor.

106. Defendants escalated the encounter by summoning multiple officers.

107.    Plaintiff did not attempt to flee.

108.    Plaintiff did not physically threaten any officer.

109.    Plaintiff did not strike or attempt to strike anyone.

110.    Plaintiff did not physically interfere with any investigation.

111.    Defendants arrested Plaintiff and charged him with disorderly conduct, obstruction of government operations, and menacing.

112.    Plaintiff's speech questioning officers and disputing the legality of their demands did not constitute disorderly conduct.

113.    Plaintiff's refusal to provide identification absent reasonable suspicion did not constitute obstruction.

114.    Plaintiff did not engage in conduct that would cause a reasonable person to fear imminent physical injury so as to constitute menacing.

115.    At the time of arrest, Defendants lacked probable cause to believe Plaintiff had committed any of the charged offenses.

116.    Plaintiff was transported to jail and confined for approximately twenty-four hours.

117.    Plaintiff suffered loss of liberty as a result of the arrest and detention.

118.    The seizure and arrest were objectively unreasonable under clearly established law.

119.    A reasonable officer would have known that arresting a citizen for speech and refusal to provide identification absent reasonable suspicion violates the Fourth Amendment.

120.    As a direct and proximate result of Defendants' unlawful seizure and arrest, Plaintiff suffered damages including loss of liberty, emotional distress, humiliation, and financial expense.

121.    Plaintiff is entitled to compensatory damages, punitive damages against the individual Defendants, attorney's fees, costs, and all other relief permitted by law.

### Count II – First Amendment Retaliation

122.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

123.    The First Amendment protects the right of citizens to criticize law enforcement officers, to file complaints regarding officer conduct, and to petition the government for redress of grievances.

124.    Plaintiff engaged in protected activity when he questioned the Beaver Dam officer regarding the traffic maneuver.

125.    Plaintiff engaged in protected activity when he sought to file a sworn complaint with the Hartford Police Department.

126.    Plaintiff engaged in protected activity when he completed a citizen complaint form.

127.    Plaintiff engaged in protected activity when he submitted public records requests seeking documentation, recordings, policies, and officer identities.

128.    Plaintiff engaged in protected activity when he followed up regarding incomplete production of records.

129.    Defendants were aware of Plaintiff's complaints and record requests.

130.    After Plaintiff engaged in this protected activity, Defendants subjected him to adverse actions.

131. Those adverse actions included detaining Plaintiff in a public parking area without reasonable suspicion.

132. Those adverse actions included arresting Plaintiff and charging him with disorderly conduct, obstruction of government operations, and menacing.

133. Those adverse actions included initiating and pursuing a criminal charge alleging false reporting of an incident.

134. Those adverse actions included arresting Plaintiff at the courthouse in connection with the false reporting charge.

135. Those adverse actions included appearing at Plaintiff's residence at night under circumstances Plaintiff reasonably perceived as retaliatory.

136. The arrests, prosecution, and public humiliation would deter a person of ordinary firmness from continuing to criticize law enforcement or pursue complaints.

137. The temporal proximity between Plaintiff's complaints and the initiation of criminal charges supports a reasonable inference of retaliatory motive.

138. The escalation of enforcement activity after Plaintiff requested records and accountability supports a reasonable inference of retaliatory intent.

139. Defendants lacked probable cause for the parking lot arrest.

140. Defendants lacked probable cause to pursue the false reporting charge because Plaintiff did not knowingly provide false information.

141. The absence of probable cause supports an inference that the adverse actions were motivated by retaliation.

142. A reasonable officer would have known that arresting or prosecuting a citizen in retaliation for filing complaints and requesting records violates clearly established First Amendment law.

143. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff suffered loss of liberty, emotional distress, reputational harm, humiliation, financial expense, and interference with his community and ministry activities.

144. Plaintiff is entitled to compensatory damages, punitive damages against the individual Defendants, attorney's fees, costs, and all other relief permitted by law.

### Count III – Malicious Prosecution - Fourth Amendment

145. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

146. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

147. The Fourth Amendment protects individuals from unreasonable seizures pursuant to legal process.

148. A claim for malicious prosecution under the Fourth Amendment requires that a defendant made, influenced, or participated in the decision to prosecute the plaintiff, that there was no probable cause for the prosecution, that the plaintiff suffered a deprivation of liberty apart from the initial seizure, and that the criminal proceeding terminated in the plaintiff's favor or under circumstances not inconsistent with innocence.

149. Defendants initiated or materially influenced the initiation of a criminal charge alleging that Plaintiff falsely reported an incident to law enforcement.

150. Defendants caused a criminal complaint and warrant to be issued against Plaintiff.

151.   Defendants relied on an interpretation of Plaintiff's statement that he was "almost struck" by a patrol vehicle.

152.   Plaintiff's statement reflected his perception of risk created by the maneuver and referred to danger to himself and his property.

153.   Plaintiff did not knowingly provide false information.

154.   At most, the alleged falsity involved a disputed interpretation of language rather than an intentional fabrication.

155.   Defendants lacked probable cause to believe that Plaintiff knowingly made a false report.

156.   Despite the absence of probable cause, Defendants caused Plaintiff to be arrested pursuant to the warrant.

157.   Plaintiff was booked, fingerprinted, and required to appear in court.

158.   Plaintiff was seized pursuant to legal process separate from the initial parking lot arrest.

159.   During a court appearance, Plaintiff was arrested again at the courthouse in connection with the false reporting charge.

160.   Plaintiff was taken into custody in a public courtroom.

161.   Plaintiff was escorted from the courtroom, transported, processed, and then released.

162.   The courthouse arrest constituted a distinct deprivation of liberty pursuant to legal process.

163.   Plaintiff was required to defend against the criminal charge.

164.   Plaintiff incurred legal expenses and suffered reputational harm as a result of the prosecution.

165. The false reporting charge was later subject to dismissal or deferment under circumstances not inconsistent with Plaintiff's innocence.

166. The initiation and continuation of the prosecution were objectively unreasonable.

167. The prosecution followed Plaintiff's complaints and record requests regarding officer conduct.

168. The absence of probable cause, combined with the timing and circumstances of the charge, supports a reasonable inference that the prosecution was retaliatory.

169. A reasonable officer would have known that initiating or continuing a criminal prosecution without probable cause violates clearly established Fourth Amendment law.

170. As a direct and proximate result of Defendants' malicious prosecution, Plaintiff suffered loss of liberty, emotional distress, humiliation, reputational injury, financial expense, and other damages.

171. Plaintiff is entitled to compensatory damages, punitive damages against the individual Defendants, attorney's fees, costs, and all other relief permitted by law.

### Count IV – First Amendment Retaliatory Prosecution

172. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

173. The First Amendment protects the right to criticize public officials, to file complaints against law enforcement officers, and to petition the government for redress of grievances.

174. Plaintiff engaged in protected activity when he questioned the officer regarding the traffic maneuver.

175. Plaintiff engaged in protected activity when he sought to file a sworn complaint.

176. Plaintiff engaged in protected activity when he completed a citizen complaint form.

177. Plaintiff engaged in protected activity when he submitted and followed up on public records requests.

178. Defendants were aware of Plaintiff's protected activity.

179. After Plaintiff engaged in that protected activity, Defendants caused a criminal charge for false reporting to be initiated against him.

180. The decision to pursue the charge occurred after Plaintiff filed complaints and sought records concerning officer conduct.

181. The prosecution was based on a disputed interpretation of Plaintiff's description of perceived danger.

182. Plaintiff did not knowingly provide false information.

183. The initiation of criminal charges would deter a person of ordinary firmness from filing complaints or requesting public records.

184. The prosecution was motivated, at least in part, by Plaintiff's protected speech and petitioning activity.

185. The temporal proximity between Plaintiff's complaints and the initiation of charges supports a reasonable inference of retaliatory motive.

186. The escalation of enforcement activity following Plaintiff's record requests supports a reasonable inference of retaliatory intent.

187. Defendants lacked probable cause to believe Plaintiff knowingly made a false report.

188. In the absence of probable cause, the retaliatory motive is sufficient to state a First Amendment violation.

189. As a result of the retaliatory prosecution, Plaintiff suffered arrest, booking, public humiliation, reputational harm, emotional distress, financial expense, and interference with community activities.

190. A reasonable officer would have known that initiating criminal charges in retaliation for protected speech violates clearly established First Amendment law.

191. Plaintiff is entitled to compensatory damages, punitive damages against the individual Defendants, attorney's fees, costs, and all other relief permitted by law.

### Count V – Municipal Liability

192. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

193. A municipality is liable under 42 U.S.C. § 1983 when a constitutional violation results from an official policy, custom, practice, failure to train, or ratification by a final policymaker.

194. The constitutional violations described above were not isolated incidents but were caused by policies, customs, practices, or deliberate indifference attributable to the municipal Defendants.

195. Defendant Ohio County, through the Ohio County Sheriff's Office and its final policymakers, maintained policies or customs permitting deputies to demand identification absent reasonable suspicion of criminal activity.

196.     Ohio County failed to adequately train deputies regarding the constitutional limits on investigative detentions and the requirement of reasonable suspicion before compelling identification.

197.     Ohio County failed to train deputies regarding citizens' clearly established right to verbally challenge police action without being subjected to arrest.

198.     Ohio County failed to discipline or correct deputies who engaged in retaliatory or unlawful enforcement conduct.

199.     These failures were moving forces behind Plaintiff's unlawful detention and arrest in the parking lot.

200.     Defendant City of Beaver Dam, through its police department and final policymakers, maintained customs or practices discouraging accountability when officers were the subject of citizen complaints.

201.     Beaver Dam failed to train officers regarding the constitutional protections afforded to citizens who criticize police conduct.

202.     Beaver Dam permitted officers to escalate verbal disputes into criminal enforcement actions without probable cause.

203.     These customs and failures contributed to the initiation and escalation of enforcement actions against Plaintiff.

204.     Defendant City of Hartford, through its police department and final policymakers, maintained policies or customs regarding complaint handling and referral of charges that permitted or encouraged retaliatory enforcement following citizen complaints.

205.     Hartford failed to train officers and supervisors regarding the constitutional prohibition against retaliatory prosecution.

206. Hartford failed to ensure neutral and objective review of citizen complaints prior to escalating matters into criminal charges.

207. Hartford permitted the initiation or continuation of a false reporting charge based on a disputed interpretation of Plaintiff's statement without sufficient evidence of knowing falsity.

208. The municipalities failed to adequately supervise officers with respect to First Amendment protections for complaint activity and public records requests.

209. The municipalities failed to implement safeguards to prevent retaliatory enforcement following protected speech.

210. The repeated escalation from complaint to detention, arrest, prosecution, and continued scrutiny reflects a pattern or custom of disregarding constitutional protections when officers are criticized.

211. The acts described herein were ratified by supervisory officials who reviewed, approved, or failed to correct the unconstitutional conduct.

212. The policies, customs, failures to train, and ratification by final policymakers were the moving forces behind the violations of Plaintiff's First and Fourth Amendment rights.

213. As a direct and proximate result of the municipal Defendants' policies and deliberate indifference, Plaintiff suffered the injuries described above.

214. Plaintiff is entitled to compensatory damages, costs, attorney's fees, and all other relief permitted by law

## Count VI – False Arrest and False Imprisonment

## Kentucky Common Law

215.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

216.    Under Kentucky law, false arrest and false imprisonment occur when a person is intentionally restrained without lawful authority.

217.    Defendants intentionally detained Plaintiff during the parking lot encounter.

218.    Defendants intentionally placed Plaintiff under arrest.

219.    Defendants transported Plaintiff to jail.

220.    Plaintiff was confined for approximately twenty-four hours.

221.    At the time of detention and arrest, Plaintiff was lawfully parked in a public area and engaged in a phone conversation.

222.    Defendants did not observe Plaintiff commit a crime.

223.    Defendants did not possess reasonable grounds to believe Plaintiff had committed disorderly conduct.

224.    Defendants did not possess reasonable grounds to believe Plaintiff had committed obstruction of government operations.

225.    Defendants did not possess reasonable grounds to believe Plaintiff had committed menacing.

226.    Plaintiff did not physically threaten any officer.

227.    Plaintiff did not strike or attempt to strike anyone.

228.    Plaintiff did not physically interfere with any investigation.

229.    Plaintiff's verbal disagreement and refusal to produce identification absent reasonable suspicion did not constitute a crime.

230. The arrest was therefore unlawful.

231. The detention and confinement were not privileged.

232. The individual Defendants were not acting in objective good faith because no reasonable officer could believe probable cause existed under the circumstances described.

233. As a direct and proximate result of the unlawful arrest and confinement, Plaintiff suffered loss of liberty, humiliation, emotional distress, reputational harm, and financial damages.

234. Plaintiff is entitled to compensatory damages, punitive damages against the individual Defendants, costs, and all other relief permitted by Kentucky law.

## Count VII – False Arrest and False Imprisonment

## Kentucky Common Law

235. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

236. Under Kentucky law, malicious prosecution requires the institution or continuation of criminal proceedings against the plaintiff, by or at the direction of the defendant, termination of the proceedings in the plaintiff's favor, lack of probable cause, malice, and resulting damages.

237. Defendants initiated or caused the initiation of a criminal charge alleging false reporting of an incident to law enforcement.

238. Defendants influenced or participated in the decision to seek a criminal complaint and warrant.

239. Plaintiff did not knowingly provide false information.

240. The alleged falsity concerned a disputed interpretation of Plaintiff's description of perceived danger.

241. Defendants lacked probable cause to believe Plaintiff intentionally made a false report.

242. Plaintiff was arrested pursuant to the warrant.

243. Plaintiff was booked, fingerprinted, and required to appear in court.

244. Plaintiff was arrested again at the courthouse pursuant to the same charge.

245. Plaintiff suffered deprivation of liberty as a result of the prosecution.

246. The criminal proceeding terminated in Plaintiff's favor or under circumstances not inconsistent with innocence.

247. Defendants acted with malice or with improper motive, including retaliation for Plaintiff's complaints and record requests.

248. As a direct and proximate result of the malicious prosecution, Plaintiff suffered loss of liberty, humiliation, emotional distress, reputational harm, and financial damages.

249. Plaintiff is entitled to compensatory damages, punitive damages against the individual Defendants, costs, and all other relief permitted by Kentucky law.

### Count VIII – False Arrest and False Imprisonment

### Kentucky Common Law

250. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

251. A civil conspiracy under Kentucky law is a combination or agreement between two or more persons to accomplish an unlawful objective or to accomplish a lawful objective by unlawful means.

252. Defendants communicated and acted in concert regarding Plaintiff's complaints and enforcement actions.

253. Defendants shared information regarding Plaintiff's statements and complaint activity.

254. Defendants coordinated detention, arrest, and prosecution decisions.

255. The objective of the coordinated conduct included suppressing or punishing Plaintiff's complaints and protected activity.

256. The underlying unlawful acts included false arrest and malicious prosecution.

257. Defendants committed overt acts in furtherance of the agreement, including arresting Plaintiff, initiating criminal charges, and arresting Plaintiff at the courthouse.

258. As a direct and proximate result of the conspiracy and underlying unlawful acts, Plaintiff suffered the damages described above.

259. Plaintiff is entitled to compensatory damages, punitive damages against the individual Defendants, costs, and all other relief permitted by Kentucky law.

## DEMAND FOR RELIEF

**WHEREFORE,** Burden respectfully requests that this Court issue judgment in his favor on all counts and award him the following relief:

a. Compensatory damages;

b. Injunctive relief;

c. Interest;

d. Punitive damages against individual Defendants in individual capacities;

e. An order declaring that Defendants' actions were unconstitutional;

f. Nominal damages;

g.  Attorney fees;

h.  Costs and expenses; and

i.  Any and all other relief available.

Respectfully Submitted,

**/s/ Robert L. Thompson**
Robert L. Thompson (KY: 98791)
THOMPSON LEGAL LLC
10529 Timberwood Circle, Unit B
Louisville, Kentucky 40223
P: 502-366-2121
F: 502-438-9999
Robert@RthompsonLegal.com

*Attorneys for Plaintiff*

**JURY DEMAND**

Plaintiff demands a jury on all triable issues.

**/s/ Robert L. Thompson**
Robert L. Thompson (KY: 98791)